1

2

3          **UNITED STATES DISTRICT COURT**

4          **EASTERN DISTRICT OF CALIFORNIA**

5

6   JANICE SUGITA,                          **CASE NO. 1:13-CV-0118 AWI MJS (PC)**

7                        **Plaintiff**
                                                  **ORDER ON DEFENDANT'S MOTION**
8                v.                               **FOR SUMMARY JUDGMENT**

9   H. LONGIA, M.D.,
                                                  (Doc. Nos. 54, 57)
10                       **Defendants**

11

12          Plaintiff Janice Sugita ("Sugita") is incarcerated and appearing pro se in this 42 U.S.C.

13  § 1983 matter.  There is one remaining claim against one remaining defendant in this case.  Sugita

14  alleges a First Amendment retaliation claim against Defendant Dr. H. Longia ("Dr. Longia").  Dr.

15  Longia now moves for summary judgment.[1]  For the reasons that follow, Dr. Longia's motion will

16  be granted and this case will be closed.

17

18                      **<u>SUMMARY JUDGMENT FRAMEWORK</u>**

19          Summary judgment is proper when it is demonstrated that there exists no genuine issue as

20  to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.

21  Civ. P. 56; <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Fortyune v. American Multi-</u>

22  <u>Cinema, Inc.</u>, 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears

23  the initial burden of informing the court of the basis for its motion and of identifying the portions

24  of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine

25  issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d

26  265 (1986); <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007).  A fact is

27  ─────────────────────
28  [1] Defendant initially filed this motion as a Rule 12(c) motion for judgment on the pleadings.  <u>See</u> Doc. No. 54.  At the pre-trial hearing, however, the Court ordered that the Rule 12(c) motion was to be converted to a Rule 56 motion for summary judgment.  <u>See</u> Doc. No. 56.  For purposes of the docket, the Court will deny the Rule 12(c) motion as moot.

"material" if it might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1103 (9th Cir. 2000).  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010).  While a "justifiable inference" need not be the most likely or the most persuasive inference, a "justifiable inference" must still be rational or reasonable.  See Narayan, 616 F.3d at 899.  Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Fitzgerald v. El Dorado Cnty., 94 F.Supp.3d 1155, 1163 (E.D. Cal. 2015); Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008).  Summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts."  Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015).   Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'"  Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).

# FACTUAL BACKGROUND[2]

Dr. Longia is a licensed physician/surgeon and has been employed by the California Department of Corrections and Rehabilitation ("CDCR") since April 2008.  DUMF 1.  Dr. Longia has been licensed to practice medicine in California since July 2005, and his primary area of practice is internal medicine.  See DUMF's 2, 3.  At all relevant times, Dr. Longia's primary duty was to provide medical care and treatment to inmates at the Central California Women's Facility ("CCWF") in Chowchilla, California.  See DUMF 4.

Dr. Longia was Sugita's treating physician at CCWF from August 2012 to December 2012.  See DUMF 5.  In addition to personally treating Sugita, Dr. Longia reviewed Sugita's pertinent medical records.  DUMF 6.

On September 27, 2012, Dr. Longia denied Sugita's request for additional physical therapy.  See Doc. No. 9 at 5:12-23.[3]  Sugita explained that the specialized treatment of a therapist was needed and qualifies as a medical diagnosis and treatment.  See id.  Sugita filed an internal grievance ("CDC 602") against Dr. Longia that complained about the decision to discontinue physical therapy.  See Doc. No. 9 at 5:12-23.  This CDC 602 grievance was denied on October 28, 2012.  See id. at § II(C).

Medical records indicate that on November 21, 2012, Dr. Longia denied Sugita's request for a renewal of the prescription pain reliever Indomethacin.  See Longia Dec. Ex. A.  However, Sugita declares that Dr. Longia "removed [Sugita's] Indomethacin on September 27, 2012."  Doc. No. 59 at 2:16-17.  Sugita filed a separate CDC 602 grievance regarding Dr. Longia's decision to not refill or prescribe Indomethacin.  See Doc. No. 9 at 5:24-6:4.  This grievance was denied on November 28, 2012.  See id. at § II(C).  Indomethacin had been prescribed to Sugita by three prior physicians, and Indomethacin had proven to be the only effective pain medication.  See Doc. No. 9 at 5:24-6:2; Doc. No. 59 at 2:1-5.  Instead of Indomethacin, it appears that Dr. Longia prescribed naproxen.  See id. at 6:12-20.

---

[2] "DUMF" refers to Defendant's Undisputed Material Fact.

[3] Doc. No. 9 is the verified First Amended Complaint.  "A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and set forth specific facts admissible in evidence."  Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc).

On January 10, 2013, Sugita declares that Dr. Okereke (a physician at CCWF) told her, "Dr. Longia told me not to give you Indomethacin because you 602'd him." Doc. No. 59 at 1:18-20.

Dr. Longia declares that he never retaliated against Sugita for filing a CDC 602 against him, and he never instructed Dr. Okereke (or any other physician or medical staff at CCWF) to deny Sugita Indomethacin or any other medication or medical care, or knowingly prescribed Sugita ineffective and endangering pain medication, because Plaintiff filed a CDC 602 against him or because of any other reason. See DUMF's 13, 14; Longia Dec. ¶¶ 9, 10. Dr. Longia declares that he denied Sugita's request for Indomethacin because it was his medical opinion that other medications would be as effective, or more effective, without the adverse side effects caused by Indomethacin (such as ulcers and kidney damage). See DUMF 7; Longia Dec. ¶ 6. Indomethacin had recently caused the death of an inmate at Valley State Prison in Chowchilla, California. DUMF 8. That death caused Dr. Longia and other physicians at CCWF to prescribe medications other than Indomethacin for pain when, as in Sugita's case, other medications would be as effective or more effective for treating pain. See id. Dr. Longia declares that his medical notes confirm his opinion that Plaintiff did not need Indomethacin, and show that, rather than ignoring her need for pain medication, Dr. Longia explained to Sugita the adverse side effects of Indomethacin, explained that Indomethacin is an NSAID (non-steroidal anti-inflammatory drug) that should not be used long-term, and told her that if she needed long-term pain medication then Tylenol would be much safer than Indomethacin. See DUMF 10; Longia Dec. ¶ 7. As of August 1, 2013, Indomethacin was no longer on the list of permitted medications prescribed by physicians to inmates in California prisons. See DUMF 9; Doc. No. 59 at 2:17-20.

As part of a prior motion for summary judgment, this Court adopted the conclusions and reasoning of a Findings and Recommendation by the Magistrate Judge. See Doc. Nos. 34, 36. In pertinent part, the Court held that Dr. Longia's decision to deny further physical therapy and Indomethacin did not amount to deliberate indifference and thus, did not violate the Eighth Amendment. See id.; see also DUMF 15.

1

## DEFENDANT'S MOTION

2

### *Defendant's Argument*

3   Dr. Longia argues that summary judgment is appropriate for several reasons.  First, the

4   order on the prior summary judgment motion defeats Sugita's First Amendment claim.  When the

5   finding was made that there was not deliberate indifference to Sugita's medical needs, there could

6   be no adverse action against Sugita.  The Indomethacin was denied because another inmate had

7   recently died due to complications with Indomethacin, and other medicines would be as effective

8   or more effective without the same potential side effects to Sugita.  That is, Sugita did not need

9   Indomethacin.  Second, the evidence shows that Sugita's First Amendment rights have been fully

10  exercised, and her rights have not been chilled.  She complained through the prison grievance

11  system, and continued to pursue the matter to this Court.  Third, there is no causation because no

12  evidence shows that Indomethacin was withheld because of Sugita's CDC 602 grievances.  Dr.

13  Okereke was not instructed to withhold Indomethacin because of Sugita's CDC 602 grievance,

14  and his purported statements are hearsay.

15  ### *Plaintiff's Opposition*

16  Sugita argues that, aside from Dr. Okereke' statement, the documented evidence shows

17  that Dr. Longia engaged in conduct that chilled her First Amendment rights.  Sugita states that she

18  told Dr. Longia that Indomethacin was the only medicine that had been effective, and that she had

19  previously unsuccessfully tried Vicodin, ibuprofen, Naprosyn, Tylenol-3 with codeine, and

20  Tylenol.  Further, according to the Physician's Desk Reference ("PDR"), Tylenol should not be

21  used for more than 10 days for pain, but Indomethacin does not have such a warning.[4]  Also,

22  Indomethacin was deleted from the California Correctional Health Care Medication List on

23  August 1, 2013, but Dr. Longia removed Indomethacin from Sugita on September 27, 2012.  In

24  that span, other prisoners were still being prescribed Indomethacin.  The timing of events, the

25  contradictions between the PDR and Dr. Longia's statements, and Dr. Longia's interactions with

26  other staff demonstrate that he was motivated by something other than medical judgment.

27

28  [4] Also, as part of the verified First Amended Complaint, Sugita states that Dr. Longia had prescribed Lisinopril for her blood pressure, but then also prescribed naproxen for pain.  Sugita contends that, per the PDR, naproxen adversely affects Lisinopril, but Indomethacin does not.  See Doc. No. 9 at 6:12-20.

*Legal Standard*

Prisoners have a clearly established First Amendment right to file grievances against prison officials, as well as the right to be free from retaliation for doing so.  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012).  A violation of these rights is actionable under 42 U.S.C. § 1983.  Jones v. Williams, 791 F.3d 1023, 1035-1036 (9th Cir. 2015).  The elements of a First Amendment retaliation claim in the prison context are:  (1) the prisoner engaged in protected conduct; (2) a state actor took some adverse action against the prisoner; (3) the prisoner's protected conduct was a "substantial factor" or "motivating reason" for the adverse action; (4) the adverse action chilled the inmate's exercise of First Amendment rights; and (5) the adverse action did not reasonably advance a legitimate correctional goal.  See Watison, 668 F.3d at 1114-15; Brodheim v. Cry, 584 F.3d 1262, 1269-72 (9th Cir. 2009).

*Discussion*

1.    Evidentiary Issue

Sugita contends that Dr. Okereke said to her, "Dr. Longia told me not to give you Indomethacin because you 602'd him." Doc. No. 59 at 1:18-20.  This is an important piece of evidence.  The statement both demonstrates causation and links Dr. Longia to a refusal to provide Indomethacin in January 2013.  In the process of converting Dr. Longia's Rule 12(c) motion into this Rule 56 motion, the Court directed the parties to address the admissibility of Sugita's testimony about Dr. Okereke's purported statement.  Dr. Longia has done so by objecting that Sugita's testimony is hearsay.  Sugita does not respond, and has not submitted evidence from Dr. Okereke.  The Court concludes that the purported statement of Dr. Okereke is inadmissible.

Sugita's testimony contains two levels of hearsay.  Sugita is attempting to relate what one person told her about what a second person had said, i.e. what Dr. Okereke told Sugita about what Dr. Longia had said.  See Bellard v. Gautreaux, 675 F.3d 454, 460-61 (5th Cir. 2012); Smith v. City of Allentown, 589 F.3d 684, 693-94 (3d Cir. 2009).  For testimony or evidence that contains multiple levels of hearsay to be admissible, there must be an exception that applies to each level of hearsay.  Fed. R. Evid. 805; Smith, 589 F.3d at 693; United States v. Marguet-Pillado, 560 F.3d 1078, 1086 (9th Cir. 2009); Skillsky v. Lucky Stores, Inc., 893 F.2d 1088, 1091 (9th Cir. 1990).

One level of hearsay in Sugita's testimony is not actually hearsay.  Dr. Longia is a defendant in this case.  Therefore, Dr. Longia's statement to Dr. Okereke is considered to be an admission of a party opponent and is not hearsay by definition.  See Fed. R. Evid. 801(d)(2)(A); Bellard, 675 F.3d at 460-61; Smith, 589 F.3d at 693.

Nevertheless, no exception has been identified for the second level of hearsay, Dr. Okereke's statement to Sugita.  There is nothing to indicate that Dr. Okereke's statement qualifies as another form of an admission under Rule 801(d)(2).  Dr. Longia is the only defendant in this case, and there is no argument or indication that Dr. Okereke was employed by Dr. Longia or otherwise authorized by Dr. Longia to make the statement.  Further, although Dr. Okereke's purported statement relates to medical treatment, and Rule of Evidence 803(4) provides a hearsay exception for statements made for the purposes of medical treatment, that exception only applies to statements made *to* a doctor, it does not apply to statements made *by* a doctor.  See Fed. R. Evid. 803(4); Bulthuis v. Rexall Corp., 789 F.2d 1315, 1417 (9th Cir. 1985); Honey v. Dignity Health, 27 F.Supp.3d 1113, 1126 (D. Nev. 2014).  The Court is aware of no hearsay exception that would allow it to properly consider Dr. Okereke's statement to Sugita for the truth of the matter asserted, i.e. that Dr. Longia did in fact tell Dr. Okereke not to give Indomethacin to Sugita because Sugita filed a CDC 602 grievance.  See Bellard, 675 F.3d at 460-61; Smith, 589 F.3d at 683-84.  Therefore, Sugita's testimony about what Dr. Okereke told here is inadmissible hearsay.  See id.

Because not every layer of hearsay is admissible, Sugita's testimony regarding Dr. Okereke's purported statement about what Dr. Longia said is inadmissible and will not be considered by the Court.  See Fed. R. Evid. 805; Smith, 589 F.3d at 683-84; Marguet-Pillado, 560 F.3d at 1086; Skillsky, 893 F.3d at 1091.

2.     First Amendment Claim

There is no question that Sugita can establish the first element of her retaliation claim.  The evidence shows that she filed two CDC 602 grievances against Dr. Longia.  See Doc. No. 9 at 5:12-6:4.  Filing an internal prison grievance is protected conduct.  See Jones, 791 F.3d at 1035; Watison, 668 F.3d at 1114.

Further, depending on the circumstances, discontinuing or failing to reissue a prisoner's medication, including pain medication, may constitute an "adverse act" for purposes of retaliation. See O'Brien v. Mich. Dep't of Corr., 592 Fed. Appx. 338, 343 (6th Cir. 2014) (holding that allegations involving the complete discontinuation of therapy and medication were sufficient to show an adverse act); Cogill v. Carabine, 2016 U.S. Dist. LEXIS 21708, *6 (D. Neb. Feb. 23, 2016) (finding that a refusal to re-prescribe a psychotropic drug, from which the prisoner had voluntarily attempted to wean himself, constituted an adverse act); Encarnacion v. Silverberg, 2015 U.S. Dist. LEXIS 128312, *16 (N.D.N.Y July 7, 2015) (holding that the discontinuation of a particular pain medication can be an adverse act).  Here, Sugita has declared that Indomethacin was the only pain medication that gave her relief.  See Doc. No. 9 at 5:24-6:2; Doc. No. 59 at 2:1-5.  Sugita has also shown that her Indomethacin was discontinued by Dr. Longia when he refused to refill her prescription, and that Dr. Okereke refused to issue her Indomethacin in January 2013.  The Court will assume without deciding that the refusal to prescribe and to refill Indomethacin are adverse acts.  See O'Brien, 592 Fed. Appx. at 343; Cogill, 2016 U.S. Dist. LEXIS 21708 at *6; Encarnacion, 2015 U.S. Dist. LEXIS 128312 at *16.

There is no dispute that Dr. Longia discontinued the Indomethacin when he refused to refill Sugita's prescription, which means that there is a clear link between one adverse act and Dr. Longia.  With respect to Dr. Okereke, the only thing that links his actions to Dr. Longia is Sugita's testimony about what Dr. Okereke told her.  However, as discussed above, this testimony is inadmissible hearsay that will not be considered.  See Fed. R. Evid. 805; Smith, 589 F.3d at 683-84; Marguet-Pillado, 560 F.3d at 1086; Skillsky, 893 F.3d at 1091.  Because there is nothing to link Dr. Longia with the January 2013 refusal by Dr. Okereke to prescribe Indomethacin, the only adverse act by Dr. Longia at issue in this case is his refusal to refill Sugita's Indomethacin.  That being said, it is unclear when exactly Dr. Longia did this.  Dr. Longia's medical records indicate that he discontinued Indomethacin on November 21, 2012, but Sugita declares that he discontinued her Indomethacin on September 27, 2012.  See Doc. No. 59 at 2:16-17; Longia Dec. Ex. A.  Given this uncertainty, the Court will examine causation using both September 27, 2012 and November 21, 2012, as the dates that Indomethacin was discontinued.

As to September 27, 2012, there is no evidence that Sugita filed a CDC 602 grievance against Dr. Longia prior to this date.  The verified Complaint shows that the first of Sugita's two CDC 602 grievances was filed after September 27, 2012, and that grievance dealt with Dr. Longia discontinuing physical therapy.[5]  See Doc. No. 9 at § II(c) & 5:12-23.  Because no grievance had been filed prior to September 27, 2012, it is impossible for any grievance filed after that date to be a substantial or motivating factor in Dr. Longia's decision to discontinue Indomethacin.  Protected conduct that has not yet occurred cannot be a cause of an adverse act.  Therefore, if Dr. Longia discontinued Sugita's Indomethacin on September 27, 2012, he did not do so because of Sugita's yet to be filed CDC 602 grievances.  Causation fails under the September 27, 2012 date.

As to November 21, 2012, this date falls after Sugita's first CDC 602, which was resolved on October 28, 2012.  See Doc. No. 9 at § II(c) & 5:24-6:4.  However, Dr. Longia declares that he did not retaliate against Sugita.  See Longia Dec. ¶ 9.  Instead, as discussed above, Dr. Longia declares that his decision to discontinue Indomethacin and replace it with a different pain medication was based on a considered medical opinion of Sugita's condition.  See id. at ¶ 6.  This is consistent with the Court's prior determination that Dr. Longia's decision was not deliberately indifferent, but was motivated by his medical opinions as to the best course of action for Sugita.  See Doc. No. 36 at 2:5-8, 2:27-3:3; Doc. No. 34 at 8:3-16.  It is also consistent with Dr. Longia's undisputed testimony that an apparent group decision by the physicians at CCWF had been made to try and avoid prescribing Indomethacin due to the recent death of an inmate at a neighboring prison facility.  See Longia Dec. ¶ 6.  Dr. Longia's declaration shows that legitimate medical concerns motivated the decision to discontinue the Indomethacin, and that Sugita's CDC 602 grievance was not a "substantial factor" or "motivating reason."  See Longia Dec. ¶¶ 6, 9.

Sugita argues that that the timing of events shows that Dr. Longia was not motivated by medical considerations.  It is true that the timing of events may indicate a causal connection between protected conduct and an adverse action.  See Ray v. Henderson, 217 F.3d 1234, 1244 (9th Cir. 2000).  However, there is no evidence that Dr. Longia knew that Sugita had submitted a CDC 602 grievance against him prior to November 21, 2012.  Without some evidence that Dr.

---

[5] September 27, 2012, was the date Dr. Longia discontinued Sugita's physical therapy.  See Doc. No. 9 at 5:12-23.

1    Longia was actually aware of the CDC 602 against him, there is a failure of causation.  See Raad

2    v. Fairbanks N. Star Borough, 323 F.3d 1185, 1197 (9th Cir. 2003); Pratt v. Rowland, 65 F.3d

3    802, 808 (9th Cir. 1995); Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982).

4            Sugita also appears to argue that Dr. Longia's decision was not medically sound because:

5    Indomethacin was the only effective pain medication, Dr. Longia's prescription of naproxen was

6    contraindicated as shown by the PDR because Sugita was also taking Lisinopril,[6] and the PDR

7    states that Tylenol should not be taken for more than 10 days.  The Court takes Sugita to be

8    arguing that Dr. Longia's decision were so medically unsound that it could not possibly be

9    legitimate, rather the decision could only be the result of retaliatory animus.  However, a prisoner

10   is not entitled to the medical treatment of her choice.  See Forbes v. Edgar, 112 F.3d 262, 267 (7th

11   Cir. 1997); Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988).  Dr. Longia continued to treat

12   Sugita for pain, just not with the medication that she preferred.  Further, as discussed in the prior

13   Findings and Recommendation and the corresponding Order Adopting, Sugita is not qualified to

14   give a medical opinion about pain medications, or the advisability of using certain medications

15   together or for greater than 10 days.  See Doc. Nos. 34, 36.  Just as her difference of opinion with

16   Dr. Longia did not show an Eighth Amendment violation, see id., it also does not show such a

17   significant deviation from reasonable medical care that a retaliatory motive may be inferred.[7]  Cf.

18   Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (finding no Eighth Amendment violation

19   when prisoner showed only a difference of opinion as to treatment and not that the chosen

20   treatment was medically unacceptable and done in conscious disregard of an excessive risk).

21   _____

22   [6] This contention is found in Sugita's verified complaint.  See Doc. No. 9 at 6:12-20.

23   [7] The Court notes that Sugita did not provide copies of the PDR pages referenced in her complaint or opposition.
     However, a review of the PDR online indicates that Tylenol's "max duration" is listed as "10 days or UD," which the
     Court understands to mean "unless directed."  See http://www.pdr.net/drug-summary/Tylenol-Regular-Strength-

24   acetaminophen-3574.  That is, the PDR indicates that a person may take Tylenol longer than 10 days if directed by a
     physician.  Also, the PDR indicates that Prinivil/Lisinopril can interact with an NSAID, and that renal monitoring

25   should occur if Prinivil/Lisinopril is taken with an NSAID.  However, the PDR states that an NSAID "may attenuate"
     the effect of  Prinivil/Lisinopril, the PDR does not state that Prinivil/Lisinopril categorically cannot be used with an

26   NSAID.  See http://www.pdr.net/drug-summary/Prinivil-lisinopril-376.  Naproxen and Indometacin are NSAID's.
     See http://www.pdr.net/drug-summary/Aleve-Caplets-naproxen-sodium-2830 , and http://www.pdr.net/search-

27   results?q=indomethacin.  Although the PDR contains cautionary entries for Tylenol and for Lisinopril when combined
     with an NSAID, the PDR shows that physicians have discretion in the use of these drugs.  Sugita's general reliance on

28   the PDR illustrates why a "mere disagreement" over treatment, especially by a person without medical training or
     experience, generally is not probative of a constitutional violation.  See Toguchi, 391 F.3d at 1058.

Finally, to the extent that Sugita may be relying on the January 2013 statement by Dr. Okereke to show causation, as discussed above, that statement is inadmissible hearsay and does not aid Sugita.  See Fed. R. Evid. 805; Smith, 589 F.3d at 683-84; Skillsky, 893 F.2d at 1091.

In sum, although Sugita's evidence suggests that she can meet at least two of the elements of a First Amendment retaliation claim, she cannot show causation.  The evidence does not show that Sugita's CDC 602 grievance(s) was a substantial factor or motivating reason for Dr. Longia's decision to discontinue/refuse to refill Sugita's Indomethacin.  Because Sugita cannot demonstrate causation, summary judgment in favor of Dr. Longia is appropriate.[8]  See Rogers v. Emerson, 617 Fed. Appx. 803, 804 (9th Cir. 2015); Burriola v. Nevada Dept. of Corr., 616 Fed. Appx. 293 (9th Cir. 2015).

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.      Defendant Dr. Longia's motion for summary judgment (Doc. No. 57) is GRANTED;

2.      For purposes of the docket, Defendant Dr. Longia's motion for judgment on the pleadings (Doc. No. 54) is DENIED as moot; and

3.      The Clerk shall ENTER JUDGMENT in favor Defendant Dr. Longia and CLOSE this case.

IT IS SO ORDERED.

Dated:   June 23, 2016                           _____

                                          SENIOR  DISTRICT  JUDGE

---

[8] The Court notes that Dr. Longia argues that Sugita cannot meet the "chilling" element because Sugita continued to pursue her complaints against him.  That is, Dr. Longia argues that this element fails because Sugita was not actually "chilled."  This argument is incorrect.  As the Ninth Circuit explained in 2009, the "focus on whether or not the record showed [the prisoner] was actually chilled was incorrect. . . . .  an objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'"  Brodheim, 584 F.3d at 1271.